[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO OPEN AND VACATE CHILD SUPPORT JUDGMENT
The issue presented by the defendant Joseph Groves' motion to appeal Family Support Magistrate Miller's decision denying his motion to open and vacate a 1988 child support judgment is whether the doctrine of res judicata applies to bar litigation of the motion to open and vacate the judgment when the subject matter jurisdiction of the court that entered the judgment is contested and when a timely appeal or motion for a new trial was not filed within the statutorily mandated time.
 FACTS
The relevant facts are as follows. The plaintiff Barbara Groves and the defendant Joseph Groves were divorced on April 5, 1983. Three children were issue of the marriage. At the dissolution of the parties marriage, the court awarded the defendant custody of the three children, the plaintiff reasonable rights of visitation, and did not enter child support orders. Subsequently, in July of 1986, the plaintiff obtained custody of the youngest child. To obtain child support contributions, the plaintiff served the defendant, on April 25, 1988, with a child support petition citing General Statutes § 17-324 [now §17b-745] and also sought a retroactive order of arrears to July of 1986. On June 8, 1988, the support petition came before Family Support Magistrate Sullivan, who entered permanent weekly orders requiring the defendant to pay $200 current support. Magistrate Sullivan also found an arrearage of $19,976 and ordered the defendant to pay $25 per week toward the arrearage.
On August 10, 1990, the defendant filed a motion to open and modify the support judgment. Both parties and their respective attorneys CT Page 6060 reached an agreement on the requested modification. Thereafter, on April 2, 1993, Family Support Magistrate Kochiss-Frankel granted the modification portion of the motion reducing both support payments to $10 weekly, denied the portion of the motion seeking to open the support judgment, and found an arrearage of $38,396 as of March 29, 1993.
On January 12, 1998, the defendant filed a second motion to open and vacate the June 8, 1988 support judgment. After hearing and briefing, Family Support Magistrate Miller rendered a decision, dated March 5, 1998, and filed on February 9, 1999[1], denying the motion on the ground that it was barred by the doctrine of res judicata. Magistrate Miller did not reach the merits of the defendant's claims. On February 19, 1999, the defendant filed an appeal of Magistrate Miller's decision to the Superior Court pursuant to General Statutes § 46b-231 (n). In response, on June 23, 1999, the attorney general's office[2] filed a motion to dismiss the pending appeal, which this court denied, holding that res judicata did not implicate the court's subject matter jurisdiction. On June 2, 1999, the defendant filed a brief on the appeal to the Superior Court requesting that Magistrate Miller's res judicata decision be reversed and that Magistrate Sullivan's decision be vacated. Thereafter, the attorney general's office filed a brief on January 18, 2000, in opposition to the motion to open and requesting dismissal of the appeal. In response, the defendant filed another brief dated February 2, 2000, to which the assistant attorney general filed a reply brief dated February 3, 2000.
 DISCUSSION
General Statutes § 46b-231 (n)(1) provides that "[a] person who is aggrieved by a final decision of a family support magistrate is entitled to judicial review by way of appeal under this section." The court will first determine whether the magistrate's decision in the present case constitutes a judgment or decision from which an appeal can be taken. The test for determining whether a claimant is aggrieved by a particular decision is two-fold: (1) "the [party] claiming to be aggrieved must have a specific, personal and legal interest in the subject matter of the decision," and (2) "the [party] must establish that his or her interest has been specially and injuriously affected by the decision." Newman v. Newman, 235 Conn. 82, 103, 663 A.2d 980 (1995). The court finds that the defendant is aggrieved for purposes of this appeal because his interest has been injuriously affected by the magistrate's decision denying his motion to open and vacate.
"A statutory right of appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.) Raines v. Freedom of InformationCT Page 6061Commission, 221 Conn. 482, 489, 604 A.2d 819 (1992). The court finds that the appeal was filed in a timely manner, within fourteen days of the decision being appealed. See General Statutes § 46b-231 (n)(2). Further, counsel certified that service of the appeal on the office of the attorney general was made in accordance with General Statutes §46b-231 (n)(2) by certified mail. "The lack of final judgment is a threshold question that implicates the subject matter jurisdiction of [the] court." (Internal quotation marks omitted.) Dacey v. CHRO,41 Conn. App. 1, 4, 673 A.2d 1177 (1996). A final judgment is one "(1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." State v. Curcio, 191 Conn. 27,31, 463 A.2d 566 (1983). In the present case, the foregoing test is met because the magistrate's orders requiring the defendant to make child support and arrearage payments are comparable to pendente lite orders which for purposes of appeal have been held to be final. See Bryant v.Bryant, 228 Conn. 630, 636, 637 A.2d 1111 (1994) (order for child support immediately appealable); and Ahneman v. Ahneman, 243 Conn. 471,478-80, 706 A.2d 960 (1998) (trial court's refusal to consider motions for financial and nonfinancial orders constituted a final judgment for purposes of appeal)
Pursuant to General Statutes § 46b-231 (n)(7), the Superior Court may affirm the decision of the family support magistrate, remand the case for further proceedings, or "reverse or modify the decision if substantial rights of the appellant have been prejudiced because the decision of the family support magistrate is: (A) In violation of constitutional or statutory provisions; (B) in excess of the statutory authority of the family support magistrate; (C) made upon unlawful procedure; (D) affected by other error of law; (B) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
"The legal doctrines of res judicata and collateral estoppel are designed to promote judicial economy by preventing relitigation of issues or claims previously resolved." (Internal quotation marks omitted.) DeMilo Co. v. Commissioner of Motor Vehicles, 233 Conn. 281,291, 659 A.2d 162 (1995). "Under the doctrine of res judicata, or claim preclusion, a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim. A judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have beenoffered for that purpose." (Emphasis in original; internal quotation marks omitted.) Id., 292. "[M]oreover, claim preclusion prevents the pursuit of any claims relating to the cause of action which were CT Page 6062 actually made or might have been made. . . . The doctrine of res judicata, therefore, applies not only to claims actually made and litigated . . . but also to claims that a party could have made in the initial action." (Emphasis in original; internal quotation marks omitted.) Id., 292-93.
"The rule of claim preclusion prevents reassertion of the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it." Delahunty v. Massachusetts MutualLife Ins. Co., 236 Conn. 582, 589, 674 A.2d 1290 (1996). "The judicial doctrines of res judicata and collateral estoppel are based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate. . . . Stability in judgments grants to parties and others the certainty in the management of their affairs which results when a controversy is finally laid to rest. . . . [The Supreme Court reviewed] the doctrine of res judicata to emphasize that its purposes must inform the decision to foreclose future litigation. The conservation of judicial resources is of paramount importance as our trial dockets are deluged with new cases daily. We further emphasize that where a party has fully and fairly litigated his claims, he may be barred from future actions on matters not raised in the prior proceeding. But the scope of matters precluded necessarily depends on what has occurred in the former adjudication." (Citations omitted; internal quotation marks omitted.) State v. Ellis, 197 Conn. 436,466-67, 497 A.2d 974 (1985).
Because the defendant's motion to open and vacate the 1988 judgment is based on the assertion that the Magistrate Court that rendered the judgment lacked subject matter jurisdiction, it is incumbent upon this court to determine whether Magistrate Sullivan had subject matter jurisdiction to enter the order regardless of the applicability of the doctrine of res judicata. "Any claim of lack of jurisdiction over the subject matter cannot be waived; and whenever it is found after suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the judicial authority shall dismiss the action." Practice Book § 25-14. "A challenge to subject matter jurisdiction, an allegation that a judgment is void, can be raised at any time . . . and the lack thereof cannot be waived. . . . [E]very presumption favors jurisdiction of a court . . . and the regularity of its processes. . . . The modern law of civil procedure suggests that even litigation about subject matter jurisdiction should take into account the importance of the principle of the finality of judgments, particularly when the parties have had a full opportunity originally to contest the jurisdiction of the adjudicatory tribunal." (Citations omitted; internal quotation marks omitted.) Monroe v. Monroe, 177 Conn. 173, 177-78,413 A.2d 819, appeal dismissed, 444 U.S. 801, 100 S.Ct. 20, 62 L.Ed.2d CT Page 6063 14 (1979). "Unless a litigant can show an absence of subject matter jurisdiction that makes the prior judgment of a tribunal entirely invalid, he or she must resort to direct proceedings to correct perceived wrongs in the tribunal's conclusive decision." (Internal quotation marks omitted.) Joe's Pizza, Inc. v. Aetna Life Casualty,Co., 236 Conn. 863, 876, 675 A.2d 441 (1996).
In his appeal brief to the Superior Court filed June 7, 1999, the defendant makes three arguments supporting his position that the Magistrate Court lacked subject matter jurisdiction to enter the 1988 support order. The defendant's first argument is that Magistrate Sullivan did not have the authority to enter the order pursuant to General Statutes § 17b-745 (then § 17b-324), because that statute is inapplicable to the present case. In response, the assistant attorney general argues that this is a non-TANF (then non-AFDC) Title IV-D support case in which the state attorney general was providing support enforcement services pursuant to General Statutes § 46b-231
(t)(3) and where the June 8, 1988 order specifically ordered that payments be made through support enforcement services.
The Family Support Magistrate Act, General Statutes § 46b-231, is entwined with General Statutes § 17b-745[3] (then § 17-324) and § 46b-215, and explicitly authorized Magistrate Sullivan to enter the support order. In 1988, General Statutes § 17-324 provided, in pertinent part, that "a family support magistrate shall have authority to make and enforce orders for payment of support to the commissioner of administrative services, directed to . . . any parent or any patient or person being supported by the state . . . under any welfare program administered by the state department of income maintenance, as said court finds, in accordance with the provisions of subsection (b) of section 17-31i[4], section 17-32[5], 17-82e[6], 17-295[7], 17-295a[8], 46b-129[9] or 46b-130[10] . . . ." General Statutes § 46b-231 (b) (15), as it existed in 1988, the year in which the order at issue was entered, provided: "`IV-D support cases' are actions for child and spousal support under Title IV-D of the Social Security Act and include cases in which support rights have been assigned to the state in AFDC cases and in foster care cases or cases in which a person has applied to the Connecticut child support enforcement bureau for child-support enforcement services." (Emphasis added.) The plaintiff applied for and received child support enforcement services from the State of Connecticut, which then characterized the present case as a non-AFDC VI-D support case as defined in General Statutes § 46b-231
(b) (15), and the June 8, 1988 order states that support payments are to be made through support enforcement services. Magistrate Sullivan, as a member of the Family Support Magistrate Division of the Superior Court, had the authority to hear the petition for child support in the present CT Page 6064 non-AFDC IV-D support case and enter a support order pursuant to General Statutes § 46b-231 (b)(7)[11], (m)(2)[12], and (t)(3)[13]. In short, Magistrate Sullivan had subject matter jurisdiction.
The court need not discuss the remaining issues but doing so will provide a complete record should the defendant appeal to the appellate court.
The defendant argues that child support modifications cannot be ordered retroactively. Magistrate Sullivan was statutorily authorized to grant the child support arrearage dating back to the date that custody of the child changed hands between the prior custodial parent to the current one. On the date when the order was entered, General Statutes § 46b-215 did not expressly or implicitly prohibit retroactive modification of support orders. It was not until No. 90-188 of the 1990 Public Acts, which amended subsection (e) of General Statutes § 46b-215, that the issue of retroactive modification of support orders was addressed by the legislature, and this was after the issuance of the 1988 judgment.
The defendant further argues in his reply brief that Magistrate Sullivan's decision is void ab initio because the approval procedure in effect in 1988 for decisions made by family support magistrates was not properly followed in this case. The statutory language of General Statutes § 46b-215 (a)[14] clearly and unambiguously empowers a family support magistrate to "make and enforce" child support orders against a parent who has refused or neglected to furnish necessary support for a minor child. See Aksoz v. Aksoz, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 75716 (April 22, 1998, Harrigan, J.) (22 Conn.L.Rptr. 19), citing the legislative history regarding the role of the family support magistrates and the Superior Court as follows: "Commissioner Harris stated: `Full time magistrates will hear support matters in both AFDC cases and non-AFDC cases for whom support enforcement services are being provided by the Department of Human Resources, Bureau of Child Support of the Family Division of the Superior Court. The role of the Superior Court for such cases would be limited to a review and appeal process, except when families which are not receiving public assistance choose the option of petitioning through the Superior Court.' Conn. Joint Standing Committee Hearings, Judiciary, Pt. 6, 1986 Sess., p. 1948, remarks of James G. Harris Jr., Commissioner of the Department of Human Resources."
The defendant also argues that Magistrate Sullivan's order was not a final and binding decision, but interlocutory in nature, and, therefore, the doctrine of res judicata was erroneously applied by Magistrate Miller, who may have opened and vacated Magistrate Sullivan's order. CT Page 6065 Magistrate Sullivan's decision was a final support order from which an appeal might have been taken pursuant to then Practice Book §§ 479B and 1268, now Practice Book § 25-66, and General Statutes § 46b-231
(n). See Vallas v. Vallas, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 112609 (May 20, 1998, Tierney,J.), where the court, on a motion for rehearing, upheld a magistrate's support order on the grounds that the defendant, inter alia, failed to timely appeal within the statutorily required period. Like the defendant in Vallas and for the reasons explained below, the defendant was subject to a support order entered in 1988 that he failed to timely appeal, and the doctrine of res judicata bars him from now doing so.
The defendant's filing of the second motion to vacate is an attempt to remedy his failure timely to appeal the April 2, 1993 order within fourteen days as required by General Statutes § 46b-231 (n)(1)[15], and his failure to move to open the judgment within four months as required by Practice Book § 17-4[16] and General Statutes §52-212a[17]. The attorney general correctly asserts, as evidenced by the court clerk's date-stamped file copies, that the defendant was served with a support petition on April 25, 1988, that support orders against him were entered on June 8, 1988, and that he did not file his first motion to open until August 10, 1990.
The defendant cannot now move to open the judgment because his appeal period has expired along with any rights he may have had to do so as a result of inaction to exercise statutory rights by not filing an appeal in a timely manner. See Lucisano v. Lucisano, 200 Conn. 202, 206,510 A.2d 186 (1986) (trial court did not err in refusing to open a judgment when the party failed to file a motion to open within four months of the judgment as required by the rules of practice). In light of the foregoing, it is submitted that the doctrine of res judicata prohibits the defendant from relitigating claims he failed to timely pursue. Judicial economy and the need for finality of judgments preclude litigants, such as the defendant, who sit on statutory rights and fail to exercise them from later attempting to litigate what might once have been meritorious claims.
"The general rules of res judicata, although not jurisdictional in nature . . . are applicable to a valid . . . and final . . . judgment, even if it is erroneous and subject to reversal. If the judgment is erroneous, the unsuccessful party's remedy is to have it set aside or reversed in the original proceedings. Such a remedy may be sought by a motion for a new trial or other relief in the court that rendered the judgment, or by an appeal or other proceedings for review of the judgment in an appellate court." (Citation omitted; quotation marks omitted.) CFM of Connecticut, Inc. v. Chowdhury, 239 Conn. 375, 395, CT Page 6066685 A.2d 1108 (1996). For the reasons explained herein, Magistrate Miller's decision denying the defendant's motion to open and vacate the judgment on the basis of res judicata is affirmed.
CUTSUMPAS, J.